BELMONT LAND AND INVESTMENT COMPANY, a CORPORATION, AND WEYMOUTH MANAGEMENT CORPORATION, a CORPORATION, D/B/A AVON ASSOCIATED WAREHOUSE COMPANY, a PARTNERSHIP, PLAINTIFFS v. THE STANDARD FIRE INSURANCE COMPANY, a CORPORATION, a MEMBER OF THE AETNA LIFE AND CASUALTY GROUP, OF HARTFORD, CONNECTICUT; WATSON INSURANCE AGENCY, INC.; AND HUGH CAMPBELL, DEFENDANTS

No. 9027SC643

(Filed 7 May 1991)

1. **Unfair Competition § 1 (NCI3d) — unfair insurance claim settlement practices — insufficient allegations**

    Plaintiffs failed to establish a claim for unfair insurance claim settlement practices in violation of N.C.G.S. § 58-63-15 where they failed to allege that defendant agents engaged in acts prohibited by the statute "with such frequency as to indicate a general business practice."

    **Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

2. **Unfair Competition § 1 (NCI3d) — unfair business practice — insufficient evidence of deception**

    Summary judgment was properly entered for defendants on plaintiffs' claim for an unfair and deceptive business prac-

tice in violation of N.C.G.S. § 75-1.1 where plaintiffs' forecast of evidence was insufficient to show any deception by defendant insurance agent which could have caused them to believe that their building was insured for full replacement cost rather than actual cash value in the event of a partial loss by fire.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

3. **Appeal and Error § 342 (NCI4th)— purported cross-assignment—error not related to order appealed**

The Court of Appeals did not address defendants' purported cross-assignment of error where the error did not relate to the order from which appeal was taken by plaintiffs as required by Appellate Rule 10(d) but related to an interlocutory and nonappealable order denying summary judgment.

**Am Jur 2d, Appeal and Error § 104.**

APPEAL by plaintiffs from Order entered 14 March 1990 by *Judge Robert W. Kirby* in GASTON County Superior Court. Heard in the Court of Appeals 6 December 1990.

*Whitesides, Robinson, Blue, Wilson and Smith, by Henry M. Whitesides and Terry Albright Kenny, for plaintiff appellants.*

*Kennedy Covington Lobdell & Hickman, by Wayne Huckel for Watson Insurance Agency, Inc., and Hugh Campbell, defendant appellees.*

COZORT, Judge.

Plaintiffs brought a declaratory judgment action against defendant Standard Fire Insurance Company (Standard Fire); by a second amendment to their complaint, plaintiffs, with a claim alleging negligence, added Watson Insurance Agency, Inc. (Watson Insurance), and Hugh Campbell as defendants. By a final amendment to their complaint, plaintiffs added a claim of unfair and deceptive business practices against Watson Insurance and Campbell. On that claim the trial court granted summary judgment for defendants Watson Insurance and Campbell. We affirm.

On 17 October 1984 defendant Hugh Campbell, one of Watson Insurance's agents, wrote to Earl Groves, President of plaintiff Weymouth Management Corporation, one of two general partners

owning Avon Associated Warehouses Company (Avon), enclosing the "renewal of [Avon's] Package policy" providing "liability and property coverage on [Avon's] various locations." Campbell's letter noted that the policy being renewed provided coverage which "required [Avon] to carry 90 percent of the actual cash value [ACV] as respects buildings and contents."

In the summer of 1985 Groves met with Campbell, who recommended that the buildings covered by the recently renewed policy be appraised. Following Campbell's recommendation Avon had these buildings appraised by General Adjustment Bureau (GAB). At the time of the appraisal the warehouse located at 927-935(R) W. Airline Ave. (the warehouse) in Gastonia was insured for $863,300. GAB appraised the warehouse's depreciated reproduction cost basis (another term for actual cash value) at $1,319,423. Based on GAB's appraisal Groves authorized, effective in August 1985, an increase in coverage on most of their buildings, including the warehouse. Coverage on the warehouse was set at $1,187,480, representing 90 percent of the buildings ACV "with plaintiffs being co-insurers for the remaining 10 percent." On 12 July 1986 the warehouse was partially destroyed by fire. It was uncontested that the reasonable cost of repair was "$428,673.00 plus temporary repairs of $17,623.00 and possibly up to $50,000.00 for the replacement of steel beams when . . . the need for steel beams has been determined." The amount payable under the coverage provided by Standard Fire's policy was disputed. Defendant Standard Fire, pursuant to the terms of the insurance policy, demanded "an appraisal of the amount of the covered loss." The appraisers agreed that the actual cash value loss payable under the policy was $361,500 plus $50,000 if new steel beams proved necessary.

Plaintiffs initiated the case below with a complaint filed 11 June 1987. Watson Insurance and Campbell were added as defendants on 10 February 1988. On 12 February 1990 plaintiffs moved to be allowed "to amend their complaint at the close of all evidence" to "allege a claim for unfair and deceptive business practices." The trial court treated the motion as one to amend prior to trial and entered an order allowing the amendment. The new claim alleged in pertinent part

9. That defendants misrepresented pertinent facts and/or insurance policy provisions relating to the coverages at issue in the new policy sold to plaintiffs.

10. That defendants knew that plaintiffs were uninformed concerning these coverages and were relying on the representations of defendants.

On 15 February 1990 defendants Watson Insurance and Campbell moved for summary judgment on the unfair and deceptive business practices claim. On 14 March 1990 the trial court entered an order granting that motion and subsequently amended the order to certify it for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure.

On appeal plaintiffs contend that the trial court erred in granting summary judgment for defendants on the unfair and deceptive business practices claim. Their claim is tenable, plaintiffs maintain, under either N.C. Gen. Stat. § 58-63-15 (1989) or N.C. Gen. Stat. § 75-1.1 (1988). We disagree.

The standard for summary judgment is well known. It is to be granted when, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Beckwith v. Llewellyn*, 326 N.C. 569, 573, 391 S.E.2d 189, 191 (1990).

[1] Citing *Pearce v. American Defender Life Insurance Co.*, 316 N.C. 461, 343 S.E.2d 174 (1986), plaintiffs state that our Supreme Court has recognized that a violation of N.C. Gen. Stat. § 58-63-15 "constitutes a Chapter 75-1.1 violation 'as a matter of law.' " *Pearce* held "that a violation of N.C.G.S. § 58-54.4 as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. § 75-1.1." *Pearce*, 316 N.C. at 470, 343 S.E.2d at 179. In 1987 and 1988 the General Assembly mandated that former Chapter 58, among other chapters dealing with insurance, be renumbered, rearranged, and consolidated, and present § 58-63-15 was derived from former § 58-54.4. Plaintiffs rely specifically on § 58-63-15(11)(a), which provides as follows:

> (11) Unfair Claim Settlement Practices. — Committing or performing *with such frequency as to indicate a general business practice* of any of the following: Provided, however, that no violation of this subsection shall of itself create any cause of action in favor of any person other than the Commissioner:

> a. Misrepresenting pertinent facts or insurance policy pro-
> visions relating to coverages at issue; . . .

Plaintiffs did not allege that defendants Watson Insurance and Campbell violated any of the acts prohibited by § 58-63-15(11) "with such frequency as to indicate a general business practice." Accordingly, they failed to establish a claim premised on violation of that statute, and judgment dismissing their claim was properly entered as to that issue. *Beasley v. National Savings Life Ins. Co.*, 75 N.C. App. 104, 109, 330 S.E.2d 207, 210 (1985), *disc. review improvidently allowed*, 316 N.C. 372, 341 S.E.2d 338 (1986); *accord Von Hagel v. Blue Cross and Blue Shield*, 91 N.C. App. 58, 60, 370 S.E.2d 695, 698 (1988).

[2] Plaintiffs allege that, even in the absence of a violation of § 58-63-15, the conduct of Watson Insurance and Campbell constituted a violation of § 75-1.1. Section 75-1.1 provides in pertinent part that

> (1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

The burden of plaintiffs' argument is that Campbell as the agent of Watson Insurance deceived Groves into believing that, in the event of a partial loss, Avon was insured for full replacement cost rather than actual cash value. The forecast of evidence, however, shows no factual dispute as to Campbell's statements regarding Avon's policy and nothing in those statements which, taken in the light most favorable to plaintiffs, supports an inference of deception.

It is uncontroverted that Avon's policy providing coverage at actual cash value was in effect for several years before Campbell took over the Avon account. Campbell's letter to Groves of 17 October 1984 read in pertinent part as follows:

> We are pleased to enclose herewith the renewal of your Package policy which provides liability and property coverage on your various locations. As we discussed during our meeting, you are to advise us of any changes to make as respects the amounts of insurance on your buildings, also the amount shown on the gross earnings endorsement. As you know, you are required to carry 90 percent of the actual cash value as respects buildings and contents. *Actual cash value is defined as cost*

*new, less depreciation. Actual cash value is not replacement cost*; and as we discussed, it will probably not be in your best interests to insure on a replacement cost basis. If we do not hear from you, we will assume that the amounts of insurance for each location are correct as shown on the enclosed policy.

Should you have any questions regarding this policy, please do not hesitate to give me a call. (Emphasis added.)

On 27 September 1985, after Avon's buildings had been appraised by GAB, Campbell again wrote to Groves

enclosing herewith the renewal of your Package Insurance Policy which provides coverage on your buildings as well as Comprehensive General Liability coverage. This policy was renewed prior to our requesting the increase in values. There will, therefore, be an endorsement showing the new values, and this will naturally create a substantial additional premium.

\* \* \* \*

If we need to make any changes in this policy other than the values of the buildings, please give me a call.

Finally, Groves testified as follows during his deposition:

Q. Mr. Groves, it is not your testimony today, is it, that Mr. Campbell ever told you that in partial loss situations such as the one in July of 1986 that you would be paid full replacement cost, is it?

A. *I don't think he said that. I think he said that we would be protected against a partial loss.*

Q. And he never told you, I take it, then, that depreciation would not be taken into consideration in a partial loss situation, did he, meaning he didn't mention it one way or the other?

A. *No; I don't think he did mention it.* All I recall is that there would be a new basis of depreciation based on that appraisal, [by GAB] but whether any distinction was made between whole or partial, I don't recall. (Emphasis added.)

The forecast of evidence does not support the plaintiffs' allegation of deception on the part of Campbell. Moreover, the evidence

**COMBUSTION SYS. SALES v. HATFIELD HTG. AND AIR CONDITIONING**

[102 N.C. App. 751 (1991)]

shows that plaintiffs received exactly the insurance coverage for which they contracted. On the question presented the trial court correctly concluded that defendants Watson and Campbell were entitled to judgment as a matter of law.

[3] Defendants Watson Insurance and Campbell included in the record a purported cross-assignment of error to the trial court's order of 18 December 1989 denying their motion for summary judgment as to all claims. Without taking an appeal an appellee may make a cross-assignment of error by the trial court "which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." N.C.R. App. P. 10(d). The error assigned by defendants does not relate to the order of 14 March 1990 from which appeal has been taken. Moreover, even if defendants had appealed from the order to which they now attempt to assign error, an order, like that of 18 December 1989, denying summary judgment is ordinarily interlocutory and nonappealable. *DeArmon v. B. Mears Corp.*, 312 N.C. 749, 758, 325 S.E.2d 223, 230 (1985). Hence, we do not address defendants' purported cross-assignment of error.

The trial court's order of 14 March 1990 is

Affirmed.

Judges WELLS and JOHNSON concur.