JEFFERSON-PILOT LIFE INSURANCE COMPANY, Plaintiff-Appellee v. ANN
L. SPENCER, Defendant-Appellant

No. 9221SC178

(Filed 18 May 1993)

1. Unfair Competition § 1 (NCI3d) — life insurance — misrepresentations as to beneficiary — detrimental reliance

Summary judgment was inappropriate where the deceased had two life insurance policies, one with defendant-wife as the beneficiary and the other with his business as the beneficiary; the business had other stockholders; the deceased had inquired about the ownership and beneficiary status of the policies and been told incorrectly that defendant was the beneficiary; plaintiff insurance company filed an action after his death to determine the rights to proceeds of the life insurance policy which listed the company as beneficiary after the husband's death; defendant filed counterclaims for unfair and deceptive practices, among other claims, contending that she would have been the beneficiary of the policy if not for the false information provided by an employee of the insurance company; there was no dispute as to the falsity of plaintiff's representations; and the trial judge granted summary judgment for plaintiff on defendant's counterclaims. N.C.G.S. § 58-63-15(1) provides that making any statement misrepresenting the terms of any policy issued or the benefits or advantages promised thereby is an unfair and deceptive act or practice in the business of insurance and a violation constitutes an unfair or deceptive trade practice as a matter of law. Defendant must show that the representations had the capacity or tendency to deceive and that she suffered actual injury as a proximate result of the misrepresentation. There was no issue of fact as to the ability of defendant's husband to change the beneficiary (the evidence was that he could not because the other shareholders in the company would not have voted for the change) and no issue of fact as to his inability to procure additional insurance after April of 1982, when he was diagnosed with malignant melanoma, but there was an issue of fact as to his financial ability to procure other insurance before 1982 and make other arrangements for defendant's financial well being after his death.

**Am Jur 2d, Insurance § 141.**

2. **Limitations, Repose, and Laches § 48 (NCI4th)— life insurance — beneficiary — erroneous information — unfair practices claim — statute of limitations**

   Summary judgment should not have been granted for plaintiff on the basis of the statute of limitations on defendant's counterclaim for unfair practices where plaintiff erroneously informed defendant's husband that defendant was the beneficiary of a life insurance policy. The statute of limitations did not begin to run until the husband could no longer make alternative arrangements to provide for defendant; therefore, whether the claim is barred by the statute of limitations is dependent upon the resolution of the factual issue of the husband's financial status from the time of the misrepresentations until his death.

   **Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 696 et seq.**

   **When statute of limitations commences to run on action under state deceptive trade practice or consumer protection acts. 18 ALR4th 1340.**

3. **Fraud, Deceit, and Misrepresentation § 38 (NCI4th)— life insurance — beneficiary — erroneous statement — constructive fraud — summary judgment**

   Summary judgment was properly entered for plaintiff insurance company on a counterclaim for constructive fraud arising from erroneous information concerning the beneficiary of a life insurance policy furnished to defendant's husband. Defendant wife failed to present evidence that plaintiff benefited from the misrepresentations or that plaintiff took advantage of its position of trust to hurt herself or her husband.

   **Am Jur 2d, Fraud and Deceit §§ 423 et seq.**

4. **Insurance § 945 (NCI4th)— life insurance — beneficiary — erroneous information — negligent misrepresentation**

   Summary judgment was properly granted for an insurance company on a negligent misrepresentation counterclaim where the insurance company had given defendant's husband erroneous information concerning the beneficiary of his life insurance policy. Although defendant presented evidence that the insurance company in the course of its business failed to exercise care in communicating information to defendant's husband, who

was justified in expecting accurate information, there is no evidence that the insurance company knew the information would be relied upon by defendant or that defendant did in fact rely upon the information to her harm.

**Am Jur 2d, Insurance §§ 2009 et seq.**

5. **Contracts § 118 (NCI4th)— life insurance—beneficiary—erroneous information—breach of contract**

Summary judgment was properly granted for plaintiff insurance company as to a breach of contract counterclaim where the insurance company had given erroneous information to defendant's husband concerning the beneficiary of one of his life insurance policies. Defendant was neither a party to the contract nor a third party beneficiary; although she contends that but for the insurance company's misrepresentation she would have been a beneficiary, she did not have the privity necessary to afford her standing to sue on the contract.

**Am Jur 2d, Contracts §§ 302-319.**

Appeal by defendant from order entered 10 October 1991 by Judge Peter W. Hairston in Forsyth County Superior Court. Heard in the Court of Appeals 1 February 1993.

*Bell, Davis & Pitt, P.A., by Stephen M. Russell and D. Anderson Carmen, for plaintiff appellee.*

*Bowden & Rabil, P.A., by S. Mark Rabil, for defendant appellant.*

COZORT, Judge.

Plaintiff insurance company filed an action to determine the rights to proceeds of a life insurance policy. Defendant, the wife of the insured, filed counterclaims grounded in (1) unfair and deceptive trade practices, (2) fraud, (3) negligence and (4) breach of contract, contending she would have been the beneficiary of the policy if not for the providing of false information by an employee of the insurance company to the insured. The trial court granted summary judgment on all of defendant's counterclaims, ruling that the proceeds of the policy be distributed to the insured's business, the designated beneficiary in the policy, and not to his wife, the defendant. We reverse the trial court's granting of summary judgment on the unfair and deceptive trade practice counterclaim and

affirm summary judgment on the remaining counterclaims. The facts follow.

In March 1974, John K. Spencer, Jr., purchased a $100,000 life insurance policy, No. 000832612 (No. 612), from Jefferson-Pilot Life Insurance Company (Jefferson-Pilot). Ann Lanier Spencer, John Spencer's wife, was the beneficiary of the policy. From 1974 to his death on 10 July 1988, John Spencer was the president and manager of a family owned business, Winston Steam Laundry, Inc. (Laundry). Other family members owning stock in the Laundry were John's mother, Kathleen H. Spencer; John's two brothers, C. Huntley Spencer and James Y. Spencer; and his first cousin, William O. Spencer, III. On 21 June 1974, John changed the beneficiary of Policy No. 612 from Ann Spencer to the Laundry. John then transferred ownership of Policy No. 612 to the Laundry on 3 July 1974.

In May 1975, John purchased another life insurance policy from Jefferson-Pilot, Policy No. 861155 (No. 155). John originally designated the Laundry as beneficiary; he changed the beneficiary to Ann Spencer in September 1975. In 1978, Wayne Sykes became the servicing agent for the Jefferson-Pilot policies John purchased. In 1979, John began experiencing health problems and sought a waiver of premium based upon disability. That same year, the Laundry ceased operating because of economic difficulties.

In September 1979, John telephoned Mr. Sykes to inquire about the ownership and beneficiary status of Policies No. 612 and No. 155. Mr. Sykes contacted the home office of the insurance company and requested the information. On 18 September 1979, Jefferson-Pilot responded by memorandum to Mr. Sykes' inquiry and stated incorrectly that "[t]he beneficiary for Policy Number 832612 is Ann Lanier Spencer, wife of the Insured if living; otherwise the surviving lawful children of the Insured, share and share alike." Mr. Sykes then relayed the incorrect information to John.

Two years later, in January 1981, John again inquired as to the ownership and beneficiary status of Policy No. 612. Mr. Sykes again sought the information from the home office. On 22 January 1981, Jefferson-Pilot again responded incorrectly that Ann Spencer was the beneficiary of the policy. The incorrect information was relayed to John. In June 1981, Jefferson-Pilot denied John's application of waiver of premium; it later reversed that decision in December 1981. John suffered a stroke in December 1982. While he was in

the hospital recovering from the stroke, John told Ann, "I have two life insurance policies. . . . Don't forget to look into it. . . . They are one hundred thousand dollars each." At some later date when John was again hospitalized, he told Ann in the presence of at least two of their children, "Don't forget that there are two insurance policies." On 23 June 1983, Jefferson-Pilot informed William Spencer, III, John's cousin and a Laundry shareholder, that the Laundry was the beneficiary of Policy No. 612. John died in July 1988.

On 16 November 1990, Jefferson-Pilot filed interpleader and declaratory judgment actions to determine the rights of Ann Spencer and the Laundry to the proceeds of Policy No. 612. Proceeds from Policy No. 155 were paid to Ann Spencer and Policy No. 155 is not at issue in this case. Ann Spencer filed an answer and counterclaims against Jefferson-Pilot and Sykes alleging (1) unfair and deceptive trade practices, (2) fraud, (3) negligence, and (4) breach of contract. Jefferson-Pilot and the Laundry moved for summary judgment. Judge Peter Hairston granted the motions for summary judgment, allowed the interpleader action, and ordered payment of the policy proceeds to the clerk of court for distribution to the Laundry. Defendant Ann Spencer appeals.

Summary judgment is appropriate if there are no genuine issues of material fact and any party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (1990). If the moving party presents evidence to negate an essential element of a claim, the non-moving party may not rest upon the allegations or denials in her pleadings, but must affirmatively take steps to show that there is a genuine issue for trial. If the non-moving party fails to meet her burden, summary judgment is proper. *Id.*

[1] On appeal, defendant Ann Spencer argues that the trial court erred in granting summary judgment because there were genuine issues of material fact as to each of her claims. We address defendant's unfair or deceptive trade practice claim first. Specifically, defendant argues that Jefferson-Pilot's misrepresentations to John that she was the beneficiary of Policy No. 612 constituted an unfair or deceptive trade practice. N.C. Gen. Stat. § 58-63-15(1) (1991) provides that "[m]aking . . . any . . . statement misrepresenting the terms of any policy issued . . . or the benefits or advantages promised thereby" is an unfair and deceptive act or practice in the business of insurance. A violation of § 58-63-15 as a matter of law constitutes an unfair and deceptive trade practice in violation

of N.C. Gen. Stat. § 75-1.1 (1988). *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 470, 343 S.E.2d 174, 179 (1986). To avoid summary judgment, defendant must show (1) that the representations made by Jefferson-Pilot had the capacity or tendency to deceive; and (2) that she suffered actual injury as a proximate result of Jefferson-Pilot's misrepresentation. *Id.* at 470-71, 343 S.E.2d at 180. Defendant need not show that the statements were made with the intent to deceive. *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1990), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991).

Since there is no dispute between the parties as to the falsity of Jefferson-Pilot's representations, we must focus on the element of reliance. This Court addressed a similar factual situation in *Pearce*, in which the wife of a deceased United States Air Force pilot sued the American Defender Life Insurance Company alleging unfair trade practices, breach of contract, breach of fiduciary duty, negligence, fraud, and breach of duty to investigate claims in a fair and equitable manner. After her husband's death in 1979, American Defender paid plaintiff the proceeds of a $20,000 life insurance policy purchased in 1968. The company refused to pay proceeds under a $40,000 accidental death rider because the rider excluded coverage for death occurring while the insured was a member of an aircraft flight crew. The trial court granted American Defender's motion to dismiss; the Court of Appeals vacated and remanded the action. *Pearce*, 316 N.C. at 465, 343 S.E.2d at 177 (citing *Pearce v. American Defender Life Ins. Co.*, 62 N.C. App. 661, 303 S.E.2d 608 (1983) ).

On remand, plaintiff presented evidence that in response to her husband's coverage inquiry in 1971, American Defender stated that the basic policy was "in full force and effect regardless of [his] occupation," and that the accidental death rider would be in force if his death occurred while he was in the Armed Forces, but not as a result of an act of war. *Id.* at 463-64, 343 S.E.2d at 176. Plaintiff further presented evidence of a conversation with her husband in which he stated to her that "he knew he was covered, and that while he was on flying status the accidental death, or . . . double indemnity, was in effect, and that [she] didn't need to worry about it." *Id.* at 471-72, 343 S.E.2d at 180. In the same conversation, plaintiff's husband stated that "he had inquired about it when he went on to flying status, and he had been made aware by the company, he had checked into it and that he was

covered." *Id.* at 472, 343 S.E.2d at 180. At the close of plaintiff's evidence, the trial court directed verdict for the defendant on the fraud and unfair trade practices claims. The jury found coverage under the accidental death rider, but the trial court allowed American Defender's motion for judgment notwithstanding the verdict, and this Court affirmed. *Id.* at 465, 343 S.E.2d at 177 (citing *Pearce v. American Defender Life Ins. Co.*, 74 N.C. App. 620, 330 S.E.2d 9 (1985) ).

On appeal, the North Carolina Supreme Court considered only the breach of contract, fraud, and unfair trade practice claims. The Court found insufficient evidence to support the first two claims. As to the unfair trade practices claim, the Court reversed, finding that plaintiff had presented sufficient evidence of a deceptive statement made by the defendant, detrimentally relied upon by plaintiff's husband, and proximately causing injury to plaintiff. The Court rejected defendant's contention that the above noted conversation between plaintiff and her husband was hearsay, reasoning that the deceased's state of mind, his belief as to the extent of his life insurance coverage, and the basis of that belief were "directly pertinent to the question of his reliance upon defendant's misrepresentation." *Id.* at 472, 343 S.E.2d at 181. The Court noted that even though all life insurance policies available contained similar aviation exclusion clauses, that fact did not preclude the possibility of the insured's detrimental reliance because "[h]ad he known that his widow would receive only $20,000 in benefits rather than the $60,000 she alleges was his belief, he might have purchased additional basic coverage or made other arrangements to provide for her financial security after his death." *Id.* n.1.

Relying upon *Pearce*, defendant contends that she presented sufficient evidence to show that John Spencer detrimentally relied upon Jefferson-Pilot's statements. Defendant presented evidence that her husband had twice inquired as to the ownership and beneficiary status of two life insurance policies which he had purchased in 1974 and 1975. Jefferson-Pilot falsely represented to him in September 1979 and January 1981 that Ann Spencer was the beneficiary of Policy No. 612. On two separate occasions when he was hospitalized, John Spencer told his wife that he had two $100,000 life insurance policies and not to forget about them. John Spencer died apparently believing his wife was the beneficiary of both policies. He took no further action to provide for her financial well-being.

JEFFERSON-PILOT LIFE INS. CO. v. SPENCER

[110 N.C. App. 194 (1993)]

In oral argument before this Court, plaintiff contended that summary judgment was appropriate because defendant had not met her burden of showing detrimental reliance, contending she had not presented evidence of John's ability after the misrepresentations to change the beneficiary of Policy No. 612, obtain other life insurance, or to provide other means of financial security. We must review the evidence relating to each of John's options.

First, we consider the evidence as to John's ability to change the beneficiary of Policy No. 612 from the Laundry to his wife. Although defendant argues that John could have attempted to obtain the consent of other shareholders in the Laundry to change the beneficiary, she presents no evidence in support of her proposition. The fact that John had power of attorney for his mother from October 1967 to July 1982 is not evidence that he could have convinced her to change the beneficiary designation. Plaintiff, however, presented affidavits from each of the other Laundry shareholders that he or she would not have voted to change the beneficiary from the Laundry to defendant.

Next, we consider John's ability to obtain other insurance. The first inquiry is whether John was insurable. Defendant presented evidence that John could have obtained life insurance from September 1979 until approximately April 1982 when he was diagnosed with malignant melanoma. Defendant presented no evidence concerning John's insurability after April 1982. Plaintiff presented evidence that John could not have obtained a standard life insurance policy in 1979 or 1981; he may have been able to obtain insurance at premiums 50%-200% higher than the standard premium rate; in 1982, Jefferson-Pilot and other carriers would not have issued insurance to an applicant diagnosed with malignant melanoma; in 1983, Jefferson-Pilot and other carriers would not have issued insurance to an applicant who had suffered a stroke; and in 1984, Jefferson-Pilot and other carriers would not have issued insurance to an applicant diagnosed with renal cell carcinoma.

The second inquiry is whether John had the financial ability to obtain additional insurance before 1982. Defendant's deposition contains the only evidence of John's financial status. In her deposition, Mrs. Spencer stated that she knew very little about her husband's financial affairs, that he had not received income from the corporation since 1979, that he owned some stock, that he received social security and disability income, and that he may have applied for

some loans from Wachovia Bank, but she did not have the records and did not know any amounts of loans. She stated that she started to borrow money from her mother during the last two years the Laundry was in operation, but could not state the amount she received. She intended to repay the loans, but her mother died and "[o]f course, I had to support and look after John Kerr all those years and there was a tremendous medical." She also stated that from 1982 to 1986, she was living on funds loaned to her by her mother.

Finally, we consider John's financial ability to make other arrangements for defendant's financial well-being after his death. Defendant's deposition testimony summarized above is the only evidence relating to John's third option. Plaintiff presented no additional evidence.

Reviewing the evidence, we find no issue of fact as to John's ability to change the beneficiary of Policy No. 612 and no issue of fact as to John's ability to procure additional insurance after April 1982. We do find a genuine issue of material fact as to John's financial ability to (1) procure other insurance before 1982 and (2) make other arrangements for defendant's financial well-being after his death. The factual issue of John's financial status must be resolved before judgment can be rendered for either party. Neither party, however, has presented sufficient evidence to resolve the issue. Accordingly, we find summary judgment inappropriate and reverse and remand for resolution of the issue of John's financial status from 1979 until his death.

[2] We next consider plaintiff's argument that defendant's unfair trade practice claim, based upon a violation of N.C. Gen. Stat. § 58-63-15(1), is barred by the statute of limitations. N.C. Gen. Stat. § 75-16.2 (1988) provides that "[a]ny civil action brought under this Chapter to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues." We must determine, then, when defendant's cause of action accrued. Our research revealed no North Carolina cases addressing the issue of accrual of an unfair trade practices claim based upon a violation of N.C. Gen. Stat. § 58-63-15(1). In North Carolina, " 'an action accrues at the time of the invasion of plaintiff's right.' " *Nash v. Motorola Com. & Electronics*, 96 N.C. App. 329, 331, 385 S.E.2d 537, 538 (1989), *aff'd*, 328 N.C. 267, 400 S.E.2d 36 (1991) (quoting *Rothmans Tobacco Co., Ltd. v. Liggett Group, Inc.*, 770

F.2d 1246, 1249 (4th Cir. 1985)). We find that in the case below the statute of limitations did not begin to run until John could no longer make alternative financial arrangements to provide for defendant. Whether defendant's claim is barred by the statute of limitations, then, is dependent upon the resolution of the factual issue of John's financial status from the time of the misrepresentations until his death. Summary judgment on the basis of the statute of limitations was error.

We now turn our attention to defendant's claims of fraud, constructive fraud, negligence, and breach of contract. Since defendant failed to address the fraud claim in her brief, her appeal as to that issue is deemed abandoned. *See* N.C.R. App. P. 28(5). As to her remaining claims, we note first that defendant asserts the claims in her own right, not in a representative capacity for her husband. Second, we note that defendant was not the designated beneficiary of Policy No. 612.

[3] In *Watts v. Cumberland County Hospital System, Inc.*, 317 N.C. 110, 115-16, 343 S.E.2d 879, 884 (1986) (citations omitted), the North Carolina Supreme Court summarized the law pertaining to constructive fraud as follows:

> Constructive fraud arises where a confidential or fiduciary relationship exists, and its proof is less "exacting" than that required for actual fraud. When a fiduciary relationship exists between parties to a transaction, equity raises a presumption of fraud when the superior party obtains a possible benefit. "This presumption arises not so much because [the fiduciary] has committed a fraud, but [because] he may have done so." The superior party may rebut the presumption by showing, for example, "that the confidence reposed in him was not abused, but that the other party acted on independent advice." Once rebutted, the presumption evaporates, and the accusing party must shoulder the burden of producing actual evidence of fraud.
>
> In stating a cause of action for constructive fraud, the plaintiff must allege facts and circumstances "(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of [defendant.]"

Although defendant has presented evidence of a fiduciary duty owed by Jefferson-Pilot to John, the insured, *see R-Anell Homes, Inc. v. Alexander & Alexander, Inc.*, 62 N.C. App. 653, 659, 303 S.E.2d 573, 577 (1983), she has failed to present evidence that Jefferson-Pilot benefited from the misrepresentations or that Jefferson-Pilot took advantage of its position of trust to hurt John or her. Therefore, summary judgment was proper as to defendant's constructive fraud claim.

[4] Defendant also alleged that she was proximately injured by Jefferson-Pilot's negligent misrepresentation. Our research revealed no North Carolina cases directly on point. In one of the first North Carolina cases recognizing an action for negligent advice, *Bradley Freight Lines, Inc. v. Pope, Flynn & Co., Inc.*, 42 N.C. App. 285, 291, 256 S.E.2d 522, 525, *disc. review denied*, 298 N.C. 295, 259 S.E.2d 299 (1979), this Court stated that "[c]ases from other jurisdictions characterize a cause of action for negligent advice as one for negligent misrepresentation." Although *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609 (1988), addressed the liability of *accountants* for negligent misrepresentation, we find the principles set forth in that case equally applicable to the case below. The North Carolina Supreme Court adopted the following definition of negligent misrepresentation:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Id.* at 209, 367 S.E.2d at 614 (quoting Restatement (Second) of Torts § 552 (1977)). The Court reasoned that the approach

recognizes that liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely. On the other hand, as the commentary makes clear, it prevents extension of liability in situations where the accountant "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated." . . .

. . . The Restatement's text does not demand that the accountant be informed by the client himself of the audit report's intended use. The text requires only that the auditor *know* that his client intends to supply information to another person or limited group of persons. Whether the auditor acquires this knowledge from his client or elsewhere should make no difference. If he knows at the time he prepares his report that specific persons, or a limited group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them.

*Id.* at 214-15, 367 S.E.2d at 617-18. Applying the above principles, we find that defendant has failed to raise a genuine issue of material fact as to her claim for negligent misrepresentation. Although defendant presented evidence that Jefferson-Pilot in the course of its business failed to exercise care in communicating information to John, who was justified in expecting accurate information, there is no evidence that Jefferson-Pilot knew the information would be relied upon by defendant or that defendant did in fact rely upon the information to her harm. Therefore, summary judgment was proper as to defendant's negligent misrepresentation claim.

[5] To assert a claim for breach of contract, defendant must be either a party to the contract or a third-party beneficiary. *See Barber v. Woodmen of the World Life Insurance Society*, 88 N.C. App. 666, 672, 364 S.E.2d 715, 719 (1988), *appeal after remand*, 95 N.C. App. 340, 382 S.E.2d 830 (1989), *disc. review denied*, 326 N.C. 363, 389 S.E.2d 820 (1990). In the case below, defendant was neither. Although defendant contends that but for Jefferson-Pilot's misrepresentation she would have been a beneficiary, we cannot find the privity necessary to afford her standing to sue on the contract. Accordingly, we find that defendant is not a proper party

to assert a breach of contract claim, and summary judgment as to that claim must be affirmed.

The judgment below is reversed and the cause remanded as to the unfair trade practices claim. Summary judgment is affirmed as to defendant's remaining counterclaims.

Reversed in part and remanded; affirmed in part.

Judges ARNOLD and WELLS concur.