MARCUS D. MILLER, PLAINTIFF v. NATIONWIDE MUTUAL INSURANCE COMPANY, DEFENDANT

No. 9219SC498

(Filed 19 October 1993)

1. **Insurance § 528 (NCI4th) — automobile accident — underinsured coverage — intrapolicy stacking**

 The trial court did not err in granting plaintiff's motion for partial summary judgment allowing plaintiff to engage in intrapolicy stacking of the UIM coverage under his father's policy. As in *Harrington v. Stevens*, 334 N.C. 586, plaintiff lived in the same household as his father, the owner of the Nationwide policy providing UIM coverage for two vehicles, and is, therefore, a "person insured" under the policy, as defined by G.S. § 20-279.21(b)(3). Thus, he is entitled to the same rights to stack coverages intrapolicy under G.S. § 20-279.21(b)(4) as the owner.

 **Am Jur 2d, Automobile Insurance § 329.**

Combining or "stacking" uninsured motorist coverages provided in single policy applicable to different vehicles of individual insured. 23 ALR4th 12.

2. **Unfair Competition § 1 (NCI3d)— automobile insurance— intrapolicy stacking—refusal to settle—partial release**

The trial court erred by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) an unfair or deceptive practices claim arising from an alleged bad faith refusal to settle an automobile insurance stacking claim. Although defendant argued that plaintiff's claims were barred by the Conditional Release and Contract executed between plaintiff and defendant at the time defendant made a payment to plaintiff, the language of the Conditional Release and Contract is not ambiguous and the intent of the parties is clear; by its plain language, the Conditional Release and Contract does not bar plaintiff's claims for unfair trade practices and bad faith refusal to settle to the extent that they relate to or arise out of plaintiff's retained claim to the additional UIM coverage for the second automobile listed under his father's policy.

**Am Jur 2d, Automobile Insurance § 446; Monopolies, Restraints of Trade, and Unfair Trade Practices § 696.**

3. **Unfair Competition § 1 (NCI3d)— unfair or deceptive practices—bad faith refusal to settle insurance claim—sufficient claim for relief**

Plaintiff's complaint in an action involving intrapolicy stacking of UIM coverage was sufficient to state a claim for relief for unfair trade practices to the extent that its allegations relate to or arise out of defendant Nationwide's refusal to pay the $100,000 UIM coverage under plaintiff's father's policy for the second of the two automobiles insured under the policy. Plaintiff's allegation that "defendant has adopted a policy and practice in the handling of its first-party insured UIM claims to uniformly contest, and refuse to pay UIM claims which involve 'stacking' of UIM coverages" is sufficient to comport with the requirement of G.S. § 58-63-15(11) that plaintiff allege that defendant violated the prohibited acts "with such frequency as to indicate a general business practice." Additionally, plaintiff alleged other relevant events and circumstances in support of his claims.

MILLER v. NATIONWIDE MUTUAL INS. CO.

[112 N.C. App. 295 (1993)]

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 696.**

**4. Insurance § 1135 (NCI4th) — automobile insurance — intrapolicy stacking — bad faith refusal to settle**

The trial court erred by dismissing a claim for bad faith refusal to settle an automobile insurance claim involving intrapolicy stacking where plaintiff alleged that defendant breached its duty of good faith in refusing, without reason, to pay plaintiff the full UIM coverage due under the policy and in refusing to effectuate a prompt, fair and equitable settlement of plaintiff's claim when liability was clear. The specific allegations of plaintiff's complaint, if proven, are sufficient to support an award of damages, including punitive damages, based upon a bad faith refusal to pay plaintiff's claim to the extent that such claim relates to or arises out of defendant's alleged bad faith refusal to pay plaintiff the UIM coverage for the second of the two automobiles insured under plaintiff's father's policy.

**Am Jur 2d, Insurance § 2009 et seq.**

Appeal by plaintiff from order granting motion to dismiss and by defendant from order granting partial summary judgment both entered 4 March 1992 by Judge Thomas W. Seay, Jr. in Rowan County Superior Court. Heard in the Court of Appeals 16 April 1993.

On 28 July 1990, plaintiff was severely injured in an automobile collision caused by the negligence of Richard Grimes. Grimes was insured by defendant Nationwide Mutual Insurance Company ("Nationwide") with policy limits of $50,000 per person. Nationwide paid plaintiff the full limits of liability under the Grimes policy. The parties have stipulated that plaintiff's damages exceed $300,000.

At the time of the collision, plaintiff was also the named insured in an automobile policy issued by Nationwide which insured a single automobile owned by plaintiff. That policy provided plaintiff with $100,000 of underinsured motorist ("UIM") coverage. In addition, Nationwide provided coverage to plaintiff's father, with whom plaintiff was residing at the time of the accident, as the named insured. Plaintiff's father's policy provided UIM coverage in the amount of $100,000 per person for two vehicles.

Plaintiff sought payment from Nationwide for the UIM coverage provided by his own policy, and, in addition, sought to "stack" the UIM coverages for each of the vehicles insured by his father's policy. Nationwide tendered payment of the UIM coverage provided by plaintiff's policy and payment of the UIM limits applicable to one vehicle under plaintiff's father's policy, but denied plaintiff's claim for the UIM benefits applicable to the second vehicle insured under the father's policy. Upon payment of the above amounts, the parties entered into a Conditional Release and Contract in which plaintiff reserved his claim against Nationwide for the additional UIM benefits applicable to the second vehicle insured under the father's policy as well as "any claims [plaintiff] might have arising out of Nationwide's refusal to pay said purported additional UIM coverage as demanded by [plaintiff]."

.Plaintiff then filed this action for breach of contract contending that he was entitled to receive an additional $100,000 of UIM coverage for the second vehicle insured under his father's policy. He also sought damages for unfair trade practices as well as punitive damages, alleging that Nationwide had not followed fair claim settlement practices and had breached the duty of good faith which it owed plaintiff.

The trial court entered partial summary judgment for plaintiff on the claim for breach of contract, allowing plaintiff to stack coverage for both vehicles insured under the father's policy, and awarded plaintiff an additional $100,000. The trial court dismissed, pursuant to G.S. § 1A-1, Rule 12(b)(6), Count II of plaintiff's complaint, which sought damages for defendant's alleged unfair trade practices, and Count III of the complaint which sought punitive damages by reason of defendant's alleged bad faith in refusing to settle the claim. Both parties appeal.

*Wallace and Whitley, by Michael Doran, for plaintiff-appellant.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Paul D. Coates and ToNola D. Brown, for defendant-appellant.*

MARTIN, Judge.

### NATIONWIDE'S APPEAL

[1] Nationwide argues that the trial court erred in granting plaintiff's motion for partial summary judgment allowing plaintiff to engage in intrapolicy stacking of the UIM coverage under his father's

policy. This very same issue has been recently decided by our Supreme Court in *Harrington v. Stevens*, 334 N.C. 586, 434 S.E.2d 212 (1993), under nearly identical facts to those in the present case. The plaintiff in *Harrington*, an adult male who was injured in an automobile collision with a negligent third party, was insured by Nationwide under a policy issued to him. Nationwide had also issued insurance policies to plaintiff's brother and father with whom plaintiff, who was financially independent, resided. The policies issued to plaintiff's father and brother each provided UIM coverage for two vehicles in the amounts of $50,000 per person and $100,000 per accident. The plaintiff sought to stack the four coverages under those two policies for a total UIM pool of $200,000. The Supreme Court held that the provisions of G.S. § 20-279.21(b)(3) and (4) in effect at the time of the accident require that "the plaintiff be allowed to stack, both interpolicy and intrapolicy, the underinsured motorist coverages of the policies of his brother and his father." *Harrington*, 334 N.C. at 591-92, 434 S.E.2d at 214.

Like the plaintiff in *Harrington*, the plaintiff in the present case lived in the same household as his father, the owner of the Nationwide policy providing UIM coverage for two vehicles. Plaintiff is, therefore, a "person insured" under the policy, as defined by G.S. § 20-279.21(b)(3). Thus, he is entitled to the same rights to stack coverages intrapolicy under G.S. § 20-279.21(b)(4) as the owner. The trial court properly granted partial summary judgment permitting plaintiff to stack the UIM coverages on multiple vehicles insured under the policy which Nationwide issued to his father. Defendant's assignments of error related thereto are overruled.

PLAINTIFF'S APPEAL

[2] Plaintiff contends that the trial court erred by dismissing, pursuant to G.S. § 1A-1, Rule 12(b)(6), Counts II and III of his complaint by which he sought to recover damages for unfair trade practices and punitive damages for defendant's alleged bad faith refusal to settle his claim. Under Rule 12(b)(6), a claim should be dismissed where it appears that plaintiff is not entitled to relief under any set of facts which could be proven. *Garvin v. City of Fayetteville*, 102 N.C. App. 121, 401 S.E.2d 133 (1991). This occurs where there is a lack of law to support a claim of the sort made, an absence of facts sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim. *Id.* In analyzing the sufficiency of the complaint under Rule 12(b)(6), the complaint

must be liberally construed. *Dixon v. Stuart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987). The question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *Harris v. NCNB*, 85 N.C. App. 669, 355 S.E.2d 838 (1987). To prevent a dismissal under this rule, a party must (1) give sufficient notice of the events on which the claim is based to enable the adverse party to respond and prepare for trial, and (2) state enough to satisfy the substantive elements of at least some legally recognized claim. *Hewes v. Johnston*, 61 N.C. App. 603, 604, 301 S.E.2d 120, 121 (1983).

Defendant argues first that plaintiff's claims as set forth in Counts II and III of his complaint were barred by the Conditional Release and Contract executed between plaintiff and defendant at the time defendant made the $150,000 payment to plaintiff. The significant portions of the Conditional Release and Contract, which was attached to the complaint, provide:

Whereas, except for the parties' dispute concerning the purported additional $100,000.00 of UIM coverage under the aforesaid policies, the parties have agreed to a payment of $150,000.00 in UIM coverage to Miller in exchange for a release of Nationwide's liability under the aforesaid policies of insurance arising out of the aforesaid accident;

. . .

2. Miller hereby . . . does forever release and discharge Nationwide of and from all claims of whatsoever kind and nature prior to and including the date hereof growing out of the UIM coverage for one of the two automobiles insured under Automobile Insurance Policy number 61-32B-240-542 issued by Nationwide to Sammy E. Miller, and resulting or to result from an automobile accident which occurred on July 28, 1990 at or near Salisbury, Rowan County, North Carolina.

3. That Miller does NOT release Nationwide, and Nationwide agrees that Miller may prosecute his claim for additional UIM coverage against Nationwide for the second of the two automobiles insured under Automobile Insurance Policy number 61-32B-240-542 issued by Nationwide to Sammy E. Miller along with any claims Miller might have arising out of Nationwide's

MILLER v. NATIONWIDE MUTUAL INS. CO.

[112 N.C. App. 295 (1993)]

refusal to pay said purported additional UIM coverage as demanded by Miller.

Generally a release executed by an injured party based on valuable consideration is a complete defense to an action for damages for such injuries. *Cunningham v. Brown*, 51 N.C. App. 264, 276 S.E.2d 718 (1981), *appeal after remand*, 62 N.C. App. 239, 302 S.E.2d 822, *disc. review denied*, 308 N.C. 675, 304 S.E.2d 754 (1983). What a release means depends upon the executing parties' intent which is determined from the language used, the parties' situation and the objectives they sought to accomplish. *McGladrey, Hendrickson & Pullen v. Syntek Fin.*, 92 N.C. App. 708, 375 S.E.2d 689, *disc. review denied*, 324 N.C. 433, 379 S.E.2d 243 (1989). When the circumstances surrounding the execution of the release are not in dispute and its terms are free from ambiguity, its meaning is for the court to determine. *Id.*

The language of the Conditional Release and Contract as set forth above is not ambiguous and the intent of the parties is clear. Plaintiff specifically released all claims related to the UIM coverage for the first vehicle covered under the Miller policy. However, plaintiff specifically retained "his claim for additional UIM coverage . . . for the second of the two automobiles . . . along with any claims . . . arising out of Nationwide's refusal to pay said purported additional UIM coverage as demanded by Miller." Therefore, by its plain language the Conditional Release and Contract does not bar plaintiff's claims for unfair trade practices and bad faith refusal to settle to the extent that they relate to or arise out of plaintiff's retained claim to the additional UIM coverage for the second automobile listed under the Miller policy.

[3] To prevail on a claim for unfair and deceptive trade practices, one must show: (1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business. *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460, 400 S.E.2d 476, 482 (1991). A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Johnson v. Beverly-Hanks & Assoc.*, 328 N.C. 202, 208, 400 S.E.2d 38, 42 (1991). "If a party engages in conduct that results in an inequitable assertion of his power or position, he has committed an unfair act or practice." *Id.* Evidence of negligence, good faith or lack of intent

are not defenses to an action under G.S. § 75-1.1. *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 394 S.E.2d 643 (1990), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991).

The insurance business is definitely one "in commerce" as an "exchange of value" occurs when a consumer purchases a policy. *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986). Unfair or deceptive trade practices in the insurance industry are governed by G.S. § 58-63-15. *Bentley v. N.C. Insurance Guaranty Assn.*, 107 N.C. App. 1, 418 S.E.2d 705 (1992). A violation of G.S. § 58-63-15 constitutes an unfair and deceptive trade practice in violation of G.S. § 75-1.1 as a matter of law. *Pearce*, 316 N.C. at 470, 343 S.E.2d at 179 (construing G.S. § 58-54.4, the predecessor to G.S. § 58-63-15); *Jefferson-Pilot Life Ins. Co. v. Spencer*, 110 N.C. App. 194, 429 S.E.2d 583, *disc. review allowed*, 334 N.C. 434, 433 S.E.2d 176 (1993). "The relationship between the insurance statute and the more general unfair or deceptive trade practices statutes is that the latter provide a remedy in the nature of a private action for the former." *Kron Medical Corp. v. Collier Cobb & Associates*, 107 N.C. App. 331, 335, 420 S.E.2d 192, 194, *disc. review denied*, 333 N.C. 168, 424 S.E.2d 910 (1992), *reconsideration dismissed*, 333 N.C. 345, 426 S.E.2d 706 (1993).

Plaintiff relies specifically on G.S. § 58-63-15(11) (f, h, m and n) which provide as follows:

(11) Unfair Claim Settlement Practices. — Committing or performing with such frequency as to indicate a general business practice of any of the following: Provided, however, that no violation of this subsection shall of itself create any cause of action in favor of any person other than the Commissioner:

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

m. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

MILLER v. NATIONWIDE MUTUAL INS. CO.

[112 N.C. App. 295 (1993)]

n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

We conclude that plaintiff's complaint is sufficient to state a claim for relief for unfair trade practices to the extent that its allegations relate to or arise out of Nationwide's refusal to pay the $100,000 UIM coverage under the Miller policy for the second of the two automobiles insured under the policy. Plaintiff specifically alleged that "defendant has adopted a policy and practice in the handling of its first-party insured UIM claims to uniformly contest, and refuse to pay UIM claims which involve 'stacking' of UIM coverages." This is sufficient to comport with the requirement of G.S. § 58-63-15(11) that plaintiff allege that defendant violated the prohibited acts "with such frequency as to indicate a general business practice." *Belmont Land and Inv. v. Standard Fire Ins. Co.*, 102 N.C. App. 745, 403 S.E.2d 924 (1991). Additionally, plaintiff alleged the following relevant events and circumstances in support of his claims for unfair trade practices:

19. That the plaintiff provided defendant with records substantiating medical expenses in excess of $98,000 arising out of the injuries sustained by plaintiff in the aforesaid accident as early as February 26, 1991, which documentation also provided clear indication that plaintiff's injuries were not only severe and extensive but also permanent and disabling to a significant degree.

. . .

21. As of April 5, 1991, defendant had sufficient information to determine that a substantial portion, if not all, of the UIM coverages available to plaintiff as an insured, would be properly due and payable to plaintiff; nevertheless, from and after April 5, 1991, through and including September 11, 1991, defendant unreasonably withheld payments of any funds due under the UIM coverage available to Miller.

22. That in refusing to pay any sums under the UIM coverages available to plaintiff, as defendant's insured, defendant first claimed not to have sufficient information to determine the extent of plaintiff's damages.

23. That by letter dated July 8, 1991, plaintiff provided the defendant with substantial additional documentation to reconfirm that plaintiff's damages exceed the sum of $300,000, which letter included a demand that defendant immediately pay its full UIM coverage limits to plaintiff.

24. That between July 8, 1991 and September 11, 1991, the defendant withheld payment of $150,000 of the remaining funds it acknowledged was due plaintiff in an effort to coerce plaintiff into relinquishing his claim for the additional $100,000.

25. That after September 11, 1991, defendant has continued to refuse payment of the additional $100,000 due plaintiff without just cause or excuse.

26. That, in refusing to pay plaintiff the additional $100,000 due under the aforesaid UIM coverage, the defendant has failed to identify any policy provision and defendant has cited no case law or statutory authority that supports its refusal to pay the additional $100,000 due plaintiff under the aforesaid UIM coverage; on the other hand, plaintiff has repeatedly cited to defendant numerous cases, and forwarded a memorandum of law to the defendant, in support of plaintiff's claim to the additional $100,000 due, as aforesaid.

27. That, upon information and belief, the defendant has adopted a policy and practice in the handling of its first-party insured UIM claims to uniformly contest, and refuse to pay UIM claims which involve a 'stacking' of UIM coverages.

28. That the aforesaid policy and practice of the defendant, upon information and belief, has been invoked on an "across-the-board" basis, without regard to its duty of good faith owed to first-party insureds and with the intent either to create a proliferation of litigation by such insureds or to unfairly coerce such insureds to abandon their legitimate claims to such additional coverage because of the prospect of expensive, protracted litigation.

. . .

30. That, upon information and belief, the defendant has persisted with said policy and practice in the handling of plaintiff's claim, as heretofore alleged, without regard to the specific facts or merits of plaintiff's claim, without regard to the ex-

press provisions of its insurance policies applicable herein and issued to plaintiff, without regard to recent decisions of the appellate courts, and in total disregard of its duty of good faith owed to plaintiff in the handling of plaintiff's claim.

The facts alleged by plaintiff are sufficient to state a claim for unfair trade practices so as to withstand a challenge under Rule 12(b)(6). For this reason, the trial judge erred in dismissing plaintiff's claim for unfair trade practices.

[4] Plaintiff also contends that Count III of his complaint was sufficient to allege a claim for bad faith refusal to settle and to support an award of punitive damages. In addition to the allegations concerning defendant's refusal to pay the additional UIM benefits which we have recited above, the plaintiff alleged:

36. That defendant's violation of its duty of good faith owed to plaintiff has been intentional, wilful, oppressive, unscrupulous, and in reckless disregard of plaintiff's right to recover the sums due under said policy of insurance, such that defendant should be assessed with, and plaintiff should recover an award for, punitive damages in excess of Ten Thousand ($10,000.00) Dollars.

Generally, punitive damages are not recoverable for breach of contract, except for a breach of a contract to marry. However, when the breach is accompanied by identifiable tortious conduct and by some element of aggravation, punitive damages may be available. *Dailey v. Integon Ins. Corp.*, 57 N.C. App. 346, 291 S.E.2d 331 (1982), *appeal after remand*, 75 N.C. App. 387, 331 S.E.2d 148, *disc. review denied*, 314 N.C. 664, 336 S.E.2d 399 (1985). This is true even if the tort constitutes or accompanies a breach of contract. *Von Hagel v. Blue Cross and Blue Shield*, 91 N.C. App. 58, 370 S.E.2d 695 (1988). "Aggravation" has been defined to include fraud, malice, such a degree of negligence as indicates a recklessness indifference to plaintiff's rights, oppression, insult, rudeness, caprice, and willfulness. *Newton v. Insurance Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976). A bad faith refusal to provide insurance coverage or to pay a justifiable claim may give rise to a claim for punitive damages. *Von Hagel, supra.* We have held in the past that where plaintiff's allegations that a defendant has acted in bad faith accompanied by willful and malicious conduct are supported by specific examples, plaintiff has sufficiently alleged a tortious act accompanied by the requisite element of "aggravation."

*Id.; Dailey, supra; Payne v. N.C. Farm Bureau Mut. Ins. Co.*, 67 N.C. App. 692, 313 S.E.2d 912 (1984). The facts and allegations in the complaint must be sufficient to prevent confusion and surprise to the defendant and to preclude recovery of punitive damages for breach of contract where tortious conduct does not accompany the breach. *Shugar v. Guill*, 304 N.C. 332, 283 S.E.2d 507 (1981). It is for the trier of fact to determine whether the alleged facts rise to the level of aggravated conduct necessary to support a claim for punitive damages. *Smith v. Nationwide Mutual Fire Ins. Co.*, 96 N.C. App. 215, 385 S.E.2d 152 (1989), *disc. review denied*, 326 N.C. 365, 389 S.E.2d 816 (1990). "An insurance company is expected to deal fairly and in good faith with its policyholders." *Robinson v. N.C. Farm Bureau Ins. Co.*, 86 N.C. App. 44, 50, 356 S.E.2d 392, 395 (1987), *disc. review denied*, 321 N.C. 592, 364 S.E.2d 140 (1988).

Based on the allegations in plaintiff's complaint as set forth above, we conclude that plaintiff has sufficiently alleged a tortious act accompanied by some element of aggravation. Plaintiff alleged that defendant breached its duty of good faith in refusing, without reason, to pay plaintiff the full UIM coverage due under the Miller policy and in refusing to effectuate a prompt, fair and equitable settlement of plaintiff's claim when liability was clear. Plaintiff specifically alleged that in refusing to pay sums due plaintiff under the Miller policy, defendant first claimed not to have sufficient information to determine the extent of plaintiff's damages, but that when plaintiff provided defendant with substantial additional documentation, defendant continued to refuse payment. Plaintiff alleged further that defendant withheld payment of $150,000 in remaining funds it acknowledged were due plaintiff in an effort to coerce plaintiff to relinquish his claim for an additional $100,000. Plaintiff also alleged that defendant failed to cite any case law or statutory authority to support its refusal to pay plaintiff, and that defendant has adopted an "across-the-board" policy and practice in the handling of its first-party insured UIM claims to uniformly contest, and refuse to pay UIM claims which involve a "stacking" of UIM coverages, in total disregard of the applicable policy provisions. These allegations of plaintiff's complaint, if proven, are sufficient to support an award of damages, including punitive damages, based upon a bad faith refusal to pay plaintiff's claim to the extent that such claim relates to or arises out of defendant's alleged bad-faith refusal to pay plaintiff the UIM coverage for the second of

the two automobiles insured under the Miller policy. Therefore dismissal of Count III of plaintiff's complaint was error.

In summary, we affirm the entry of partial summary judgment in plaintiff's favor with respect to the relief sought in Count I of the complaint. However, we must vacate the order dismissing Counts II and III of the complaint and remand the case to the Superior Court of Rowan County for further proceedings.

Plaintiff's appeal—Vacated and Remanded.

Defendant's appeal—Affirmed.

Judges EAGLES and JOHN concur.