McGLADREY, HENDRICKSON & PULLEN, A PARTNERSHIP (FORMERLY A. M. PULLEN & CO.) v. SYNTEK FINANCE CORPORATION (FORMERLY THE WASHINGTON GROUP, INCORPORATED)

No. 8818SC274

(Filed 7 February 1989)

**Corporations § 20; Compromise and Settlement § 1.1— action to recover dividend —release not applicable**

Summary judgment was improperly granted for defendant, and should have been granted for plaintiff, in an action by a shareholder to recover a dividend paid by defendant corporation to all other Preferred A stockholders but not to plaintiff where defendant raised as a defense a release executed by the various defendants in other lawsuits, including the plaintiff and defendant here; the parties clearly intended the release to resolve and discharge all claims that were connected with or related to those cases and to leave undisturbed claims not so related; those lawsuits concern the manipulation of the market price of defendant's common stock and the dissipation of its pension and profit sharing plans; and plaintiff's rights to its Preferred A stock and the dividends were not connected with or related to those matters.

APPEAL by plaintiff from *Collier, Judge*. Order and judgment entered 2 December 1987 in Superior Court, GUILFORD County. Heard in the Court of Appeals 4 October 1988.

Plaintiff's action, as the owner of 42,748 shares of Preferred A stock of defendant corporation to recover a dividend that defendant paid all other Preferred A shareholders on or about 10 July 1984, was dismissed by an order of summary judgment that also denied a similar motion by plaintiff. In its answer, defendant admitted that the dividend was issued and plaintiff did not receive it but denied that plaintiff was the record owner of the shares; and later in purporting to answer plaintiff's interrogatory concerning that same fact defendant unresponsively stated that its "contention was" that plaintiff "was not entitled to" the shares. But at the hearing on the motions except for a release alleged to bar plaintiff's claim, defendant offered no proof that plaintiff did not own the shares or was not entitled to them, though plaintiff presented materials that clearly show both its ownership and entitlement. With respect to the release and its effect the affidavits, exhibits and other materials presented to the court establish the following facts without contradiction:

In 1977 when The Washington Group, Inc. filed for reorganization under Chapter X of the Federal Bankruptcy Act, plaintiff had a claim against it for accounting and auditing services rendered. With the approval of the bankruptcy court the claim was settled in February 1982 by defendant issuing to plaintiff 42,748 shares of its Preferred A stock and plaintiff has held those shares ever since. On or about 10 July 1984 defendant declared the dividend involved and paid it to all Preferred A stockholders except plaintiff. At a meeting of defendant's shareholders on 20 December 1985 plaintiff voted all of its 42,748 shares without objection by defendant. Meanwhile, three lawsuits involving the decline of The Washington Group had been pending in the same federal court since 1978: The first, *Collins v. Bagley, et al.*, was a class action for shareholders that purchased defendant's common stock between 4 November 1972 and 20 June 1977; it was against The Washington Group, Inc., its principal officers, Bagley and Gilley, two stock brokerage concerns, two banks, and several others including the plaintiff, then known as A. M. Pullen & Co. The gist of the allegations against all the defendants other than Pullen was that during the period stated, contrary to federal securities law and regulations, they fraudulently maintained the market price of the company's *common stock* at an artificially high level by purchasing various quantities of the stock for fiduciaries, by inducing various company employees and other insiders to buy the stock, and by helping various purchasers of the stock to obtain loans to pay for it; the only allegation against Pullen was that it aided and abetted the subterfuge of the other defendants by filing inaccurate and misleading audit reports of the company's financial activities and affairs. The second suit, eventually styled *Syntek Investment Properties, Inc. v. Bagley, et al.*, was an offspring of the first and was severed from it after the reorganization trustee of the bankrupt Syntek, Richard A. Gilbert, was permitted to join in it as a party plaintiff, and his allegations of wrongdoing were identical to those in the parent case. The third case, *Fulk v. Bagley, et al.*, a class action suit on behalf of all eligible company employees, charged The Washington Group, Inc., its two principal officers, and two banks with dissipating and diverting the company's pension and profit sharing trust funds. On 31 August 1984 the various *defendants* in the three cases, including this plaintiff and defendant, executed an agreement which stated in pertinent part that each did:

[H]ereby fully and unconditionally release and forever discharge each other from and of any and all claims, losses, liabilities, demands, actions or causes of action of any kind or character (including, without limitation, for attorneys' fees, costs and expenses) whether known or unknown, with knowledge that such may exist, whether at law or in equity, whether in contract, tort or under statute or otherwise, which they or any of them have or may have which in any way are related to or connected with the allegations asserted in, allegations which could have been asserted in, or the subject matter of, *Collins v. Bagley*, Civil Action No. C-78-335-WS, *Fulk v. Bagley*, Civil Action No. C-78-333-WS or *Syntek Investment Properties, Inc. v. Bagley*, Civil Action No. C-78-335(a)-WS (Such Claims) and it is agreed that these mutual releases apply to all Such Claims which have arisen or could have been asserted as of this date and to all Such Claims that may arise after this date.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Reid L. Phillips and Jeffrey A. Batts, for plaintiff appellant.*

*Petree Stockton & Robinson, by Norwood Robinson, Robert J. Lawing, and Jane C. Jackson, for defendant appellee.*

PHILLIPS, Judge.

The only disputed issue in this case is the effect of the foregoing release upon plaintiff's status and rights as the owner of 42,748 shares of Preferred A stock in defendant corporation— plaintiff contending that it had no effect, defendant that it barred "every right of any kind" plaintiff had against defendant when the release was executed. Those being the contentions the order of summary judgment determining that the case has no genuine issue of material fact is arguably an adjudication that by executing the release plaintiff surrendered all of its rights in its shares. But whether the adjudication is viewed as cancelling all plaintiff's rights in the stock, or just its dividend rights, or just its right to the dividend declared before the release was signed, the adjudication is erroneous and we reverse; for the record does authorize summary judgment, but not for defendant.

Under our law a comprehensively phrased "general release," in the absence of proof of a contrary intent, is usually held to

discharge all and sundry claims between the parties. *Merrimon v. The Postal Telegraph-Cable Company*, 207 N.C. 101, 176 S.E. 246 (1934). Though defendant's brief repeatedly refers to the release in this case as a "general release," and cites many general release cases, it is not a general release, but a release specifically limited in scope. It does not purport to apply to all possible claims between the parties or even all outstanding claims, but expressly limits its application to claims that are "related to or connected with" . . . "in any way" the allegations made, or that could have been made in one of the three lawsuits named. That in a lawsuit it is possible to allege anything, however irrelevant or frivolous, does not make this a general release as defendant contends; for such a construction would make the limitation that the release is based upon meaningless, which it is not. And since the release does not even contain the words "shares," "dividends," or "rights" and the stock was not a claim, but property plaintiff had owned for three years, it cannot be construed as a surrender of plaintiff's rights either to the shares or the dividends on them.

Under our law what a release means depends upon the intention of the parties when they executed it, their intention is determined from the language used, the situation they were in, and the objects they sought to accomplish, *Moore v. Maryland Casualty Co.*, 150 N.C. 153, 63 S.E. 675 (1909), and its meaning is for the court to determine when the circumstances concerning its execution are not in dispute and its terms are free of ambiguity. *Briggs v. American & Efird Mills, Inc.*, 251 N.C. 642, 111 S.E. 2d 841 (1960). With respect to the meaning of the release in this case, the record indisputably shows that: All the parties to it were defendants in one or more of the three pending cases; the cases containing allegations of market price manipulation and plaintiff's deceptive audit reports were pending and had been for years when defendant settled plaintiff's claim for auditing services by issuing the Preferred A shares involved; the object of all the parties was to resolve all claims between them that were connected with or related "in any way" to those cases, they chose language suitable to accomplish that, and did not consider "re-settling" plaintiff's property rights in the Preferred A shares.

The only possible conflict concerns the discussion of plaintiff's stock and the dividend on it before the release was executed, a matter that was addressed by four affidavits. In two of

the affidavits Robert E. Payne, plaintiff's attorney, states upon personal knowledge that: He was present at and actively involved in all the settlement negotiations that led to the release; on one occasion during the negotiations defendant's then lawyer, Howard Manning, proposed that plaintiff return its stock, he immediately rejected the proposal, and during the rest of the negotiations preceding the execution of the agreement neither plaintiff's shares nor any dividends arising from them were mentioned. An affidavit by an executive partner of plaintiff states that the partnership did not learn about the dividend until the fall of 1985, a year after it was issued. The other affidavit, by defendant's vice-president, William S. Friedman, without saying or indicating that anything in it is within his personal knowledge, as Rule 56(e), N.C. Rules of Civil Procedure requires, states that: "During the settlement negotiations leading to the agreement and release, Syntek Finance Corporation discussed with McGladrey, Hendrickson & Pullen the fact that the release would bar any and all claims by McGladrey, Henrickson & Pullen against Syntek Finance Corporation which existed on the date the mutual release was signed. . . . It was intended that the release would bar every right of any kind by McGladrey, Hendrickson & Pullen against Syntek Finance Corporation including the Preferred stock and the dividend thereon." This affidavit, even apart from its failure to state that it is based on personal knowledge, does not contradict plaintiff's affidavits and thus raises no conflict. For what it states is that the corporate and partnership entities conversed or discussed, which they could not have done since corporations speak and act only through their officers, partners and other agents; and the affidavit says nothing about any person, in any capacity, saying, doing or hearing anything in regard to either the shares or the dividend. And the declaration that the parties intended "to bar every right of any kind" that plaintiff had against defendant is without effect since any such intent is clearly negated by the unambiguous language of the release, along with the other' circumstances, including the fact that plaintiff's rights to the shares had been settled a year earlier, long after the cases settled by the release were filed, and the release does not mention those rights.

What the parties intended by the release, as it clearly states, was to resolve and discharge all claims that were connected with or related to either of the three cases whether the claims had

been asserted or not, and to leave undisturbed claims not so connected or related. Since the three cases concerned only the manipulation of the market price of defendant's common stock and the dissipation of its pension and profit sharing funds and plaintiff's rights to its Preferred A stock in defendant and the dividends on it are not connected with or related to either of those matters in any way, the release is no bar to the rights stated and judgment for plaintiff is required.

The order of summary judgment for defendant is therefore vacated and the matter remanded to the Superior Court for the entry of judgment for plaintiff in accord with this opinion. The arguments concerning attorney fees are not addressed since no ruling with respect thereto has been made by the trial court.

Vacated and remanded.

Judges EAGLES and PARKER concur.