**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-2087

PAUL D. CARTY,

Plaintiff - Appellant,

v.

WESTPORT HOMES OF NORTH CAROLINA, INC.; WPNC DEVELOPMENT,
LLC; JOHN B. SCHEUMANN; STEVEN M. DUNN; CHARLES D.
SCHEUMANN,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte. Graham C. Mullen,
District Judge. (3:08-cv-507-GCM-DCK)

Argued: January 20, 2012          Decided: April 30, 2012

Before DUNCAN, WYNN, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion. Judge Wynn wrote the opinion,
in which Judge Duncan and Judge Diaz concur.

**ARGUED**: Katherine Freeman, KATHERINE FREEMAN, PLLC, Charlotte,
North Carolina, for Appellant. Michael A. Wukmer, ICE MILLER,
LLP, Indianapolis, Indiana, for Appellees. **ON BRIEF**: Stephen
W. Kearney, Charlotte, North Carolina, for Appellant. Scott M.
Tyler, Neil T. Bloomfield, MOORE & VAN ALLEN, PLLC, Charlotte,
North Carolina; George A. Gasper, ICE MILLER, LLP, Indianapolis,
Indiana, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Plaintiff Paul D. Carty brought numerous causes of action against two businesses in which he had been involved and the businesses' other owners. The district court dismissed Carty's suit. Because all of Carty's claims fail, as a matter of law, to state a claim upon which relief can be granted, we affirm the district court.

I.

In September 2004, Carty and Defendants John B. Scheumann, Charles D. Scheumann, and Steven M. Dunn (collectively "Individual Defendants") formed two businesses, Westport Homes of North Carolina, Inc. ("Westport") and WPNC Development, LLC ("WPNC").[*] The two businesses, which developed and sold real estate in North Carolina, essentially employed Carty as an officer. Upon the formation of the businesses, Carty and the Individual Defendants entered into two agreements: a Shareholders Agreement relating to Westport ("Westport Shareholders Agreement"), and an Operating Agreement relating to WPNC ("WPNC Operating Agreement").

---

[*] The Individual Defendants and Westport and WPNC are referred to collectively as "Defendants."

Per the Westport Shareholders Agreement, Carty was given 225 common shares of the total 1500 common shares of Westport stock. The Westport Shareholders Agreement gave Westport the right to purchase some or all of any shareholder's stock involuntarily. The Westport Shareholders Agreement further allowed the purchase price for such an involuntary share transfer to be paid in all cash, or twenty percent in cash and eighty percent in the form of a promissory note. Notably, such a note would be, among other things, "subordinated to all debts and liabilities that are owed by the Corporation to a third party." J.A. 168. The Westport Shareholders Agreement also designated Indiana law as controlling.

Similarly, the WPNC Operating Agreement allowed an eighty-percent supermajority of WPNC's members to involuntarily remove a manager. The WPNC Operating Agreement also allowed WPNC to purchase, forcibly, the membership interest of any member. And, like the Westport Shareholders Agreement, the purchase price for that interest could take the form of all cash, or twenty percent in cash and eighty percent in the form of a promissory note. Again, such a note would be, among other things, "subordinated to all debts and liabilities that are owed by the Company to a third party." J.A. 57. The WPNC Operating Agreement also designated Indiana law as controlling. And the

WPNC Operating Agreement included a clause stating that the parties had had the opportunity to seek the advice of counsel.

In late 2006/early 2007, Westport and WPNC removed Carty from the companies. Specifically, pursuant to the Westport Shareholders Agreement and the WPNC Operating Agreement, a supermajority of Westport's and WPNC's owners removed Carty from his managerial roles and forced an involuntary purchase of his ownership interests. Per the 2004 agreements, the involuntary purchases took place in the form of twenty percent in cash and eighty percent in a promissory note subordinated to all other debt. Also at that time, Carty entered into a Termination Agreement, pursuant to which he received $75,000 for, among other things, a release of "any and all claims, actions, causes of action or demands against the Companies . . . ." J.A. 220.

In October 2008, Carty filed a lawsuit, which Defendants removed to federal district court and then moved to dismiss. In response, Carty filed an Amended Complaint in the district court in January 2009. In the Amended Complaint, Carty stated eight causes of action: breach of the WPNC promissory note; breach of the Westport promissory note; unjust enrichment; constructive fraud; breach of fiduciary duty; a claim under North Carolina's Unfair and Deceptive Trade Practices Act; tortious interference with Carty's agreements with WPNC and

4

Westport; and economic duress. Defendants again moved to dismiss.

In May 2010, a magistrate judge issued a memorandum and recommendation that the motions to dismiss be granted. Carty filed various objections to the memorandum and recommendation. Nevertheless, in August 2010, the district court entered an order granting the motions and dismissing the case. Carty appeals.

II.

On appeal, Carty argues that the district court erred in dismissing all of his claims and in denying him leave to further amend his complaint. We review de novo the district court's dismissal. Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006). When ruling on a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, to survive the motion, a complaint must contain sufficient facts to state a claim that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Further, "[w]e review the district court's denial of leave to amend the complaint for an abuse of discretion." US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 320 (4th Cir. 2010) (quotation marks omitted).

5

A.

As an initial matter, we note that, at the time his employment and ownership interests were severed, Carty entered into a Termination Agreement with Westport and WPNC. Pursuant to that agreement, he received $75,000 for, among other things, a release of "any and all claims, actions, causes of action or demands against the Companies . . . ." J.A. 220. The Termination Agreement would appear to bar, at a minimum, Carty's claims against Westport and WPNC. See, e.g., Ind. Bell Tel. Co., Inc. v. Mygrant, 471 N.E.2d 660, 664 (Ind. 1984) (noting "the important policy of upholding releases in order to facilitate the orderly settlement of disputes"); McGladrey, Hendrickson & Pullen v. Syntek Fin. Corp., 92 N.C. App. 708, 710-11, 375 S.E.2d 689, 691 (1989) ("[A] comprehensively phrased 'general release,' in the absence of proof of contrary intent, is usually held to discharge all . . . claims between the parties."). However, Carty alleges, among other things, that he entered into the Termination Agreement under coercion amounting to economic duress. We therefore look beyond the Termination Agreement to the individual claims to determine whether each was properly dismissed.

6

With his first two causes of action, for breach of contract, Carty contends that Westport and WPNC breached their contracts by refusing to pay as required by the promissory notes. Specifically, Carty alleges that WPNC and Westport relied upon the promissory notes' subordination clauses to refuse payment but that those clauses, which are identical, are vague, unconscionable, and invalid.

The notes' subordination provisions state that "the payment of the principal of and interest on this Note shall be subordinated in right of payment . . . to the prior payment in full of all debt, including debt owed to John B. Scheumann." J.A. 227, 232. There is nothing vague or unclear about these provisions. This Court is thus not free to re-write them. First Nat'l Bank & Trust v. Indianapolis Pub. Hous. Agency, 864 N.E.2d 340, 350 (Ind. Ct. App. 2007) ("When the language of a contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument. In such a situation, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions.") (citation omitted); Weaver v. St. Joseph of the Pines, Inc., 187 N.C. App. 198, 207, 652 S.E.2d 701, 709 (2007) ("When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law

for the court, and the court cannot look beyond the terms of the contract to determine the intentions of the parties.") (quotation marks and brackets omitted).

Further, almost identical provisions exist in the Westport Shareholders Agreement and the WPNC Operating Agreement. Yet Carty never claimed that those agreements, or their subordination clauses, were somehow vague or unclear. Moreover, under those agreements, which Carty does not challenge, WPNC and Westport are entitled to do precisely what Carty is disputing here: subordinate his note to all other debt.

Additionally, Carty does not allege that all debt, to John Scheumann or otherwise, has been paid. Indeed, Carty does not even allege generally that "all conditions precedent have been performed, have occurred, or have been excused." Ind. Trial P. R. 9. See also N.C. R. Civ. P. 9 ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred."). Carty therefore fails to allege that this condition precedent in the notes has been satisfied.

Finally, to the extent that Carty claims that he signed the WPNC and Westport promissory notes only under coercion and that the notes' subordination language should therefore be disregarded, that argument necessarily fails

8

because a promissory note recipient need not sign the note. See Ind. Code § 26-1-1-201; N.C. Gen. Stat. § 25-1-201; Ind. Code § 26-1-3.1-104, cmt. 1; N.C. Gen. Stat. § 25-3-104, cmt. 1.

In essence, we agree with the magistrate judge's observation in his memorandum and recommendation that Carty "seeks to have terms of agreements he does not like nullified by the Court." J.A. 310. Because Carty failed to sufficiently plead a breach of contract, we conclude that the district court properly dismissed his first two causes of action.

C.

With his third cause of action, for unjust enrichment, Carty claims that all Defendants purposefully overstated distributions to Carty for 2006 and 2007 in Form K-1s, making Carty's tax liability appear greater than it should have.

However, it is well-established that "[t]he doctrine of unjust enrichment is based on 'quasi-contract' or contract 'implied in law' and thus will not apply here where a contract exists between two parties." Atl. & E. Carolina R. Co. v. Wheatly Oil Co., Inc., 163 N.C. App. 748, 753, 594 S.E.2d 425, 429 (2004); see also Sapp v. Flagstar Bank, FSB, 956 N.E.2d 660, 667 (Ind. Ct. App. 2011) (holding that a bank could not assert an unjust enrichment claim against a customer arising out of the customer's allegedly improper withdrawal where the bank's and

the customer's relationship was governed by contract). Here, several detailed agreements exist between the parties, governing, among other things, the ownership and employment relationships.

Further, to successfully state a claim for unjust enrichment, a plaintiff must allege that (1) he conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit. Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988); see also Fiederlein v. Boutselis, 952 N.E.2d 847, 858 (Ind. Ct. App. 2011) ("To prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."). Here, Carty has failed to allege that he paid any taxes owed by Defendants or otherwise conferred on the Defendants any benefit. For these reasons, Carty's unjust enrichment claim therefore fails.

D.

With his fourth cause of action, for constructive fraud, Carty claims that the Individual Defendants made material misrepresentations regarding the subordination clauses in the

10

promissory notes and regarding Westport's and WPNC's intent and ability to pay the notes. Carty alleges that the Individual Defendants had a fiduciary duty to be open with Carty due to his minority ownership and special relationship, and that he reasonably relied on the misrepresentations to his detriment.

Carty fails, however, to allege any specifics about the purported misrepresentations. Further, the Westport Shareholders Agreement and the WPNC Operating Agreement made clear that the promissory notes would be subordinated to all other debt. And as already noted, Carty has made no allegation that the Westport Shareholders Agreement and the WPNC Operating Agreement were objects of constructive or other fraud. So the promissory notes' being consistent with the 2004 agreements—which they are—cannot, as a matter of law, constitute fraud. See Shortridge v. Platis, 458 N.E.2d 301, 304 (Ind. Ct. App. 1984) ("There can be no recovery in fraud for a deception by which a person is induced to do something which he is already bound to do."). Carty's constructive fraud claim therefore fails.

E.

With his fifth cause of action, Carty alleges that the Individual Defendants breached their fiduciary duties to Carty. Specifically, Carty alleges that, as majority owners of Westport

11

and WPNC, the Individual Defendants owed Carty a fiduciary duty, but that they acted to their benefit and Carty's detriment in forcing him from his ownership interest in WPNC and Westport, causing him economic harm. Carty contends that this constituted a breach of the Individual Defendants' duty of loyalty.

Here again, the Individual Defendants' actions fully comport with the 2004 contracts, which expressly allowed for involuntary share transfers, i.e., ousting owners from their interests. This is what happened to Carty. Yet Carty nowhere challenges either the Westport Shareholders Agreement or the WPNC Operating Agreement. The Individual Defendants' forcing Carty from his ownership interest therefore cannot serve as the basis for a breach of fiduciary duty claim. See MFP Eagle Highlands, LLC v. Am. Health Network of Indiana, LLC, No. 1:07-cv-0424-DFH-WGH, 2009 WL 77679, at *6 (S.D. Ind. Jan. 9. 2009) ("Quite simply, [the party] was completely within its contractual rights to [engage in the disputed transaction], so it was not violating other legal duties in doing so."); Regan v. Natural Res. Grp., Inc., 345 F. Supp.2d 1000, 1011-13 (D. Minn. 2004) (holding that terminated shareholder's breach of fiduciary claim must fail where shareholders' agreement explicitly allowed shareholder to be terminated without cause).

12

Carty's sixth cause of action, for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, essentially boils down to a claim that Defendants used a straw man to qualify as general contractors in North Carolina and engaged in unspecified "other fraudulent acts and omissions." J.A. 144.

Notably, "[i]t is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [Chapter 75]." Eastover Ridge, L.L.C. v. Metric Constructors, Inc., 139 N.C. App. 360, 367-68, 533 S.E.2d 827, 832-33 (2000) (quotation marks omitted). To become an unfair trade practice, a breach of contract must be "characterized by some type of egregious or aggravating circumstance . . . ." Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998). Further, there exists a "longstanding presumption against unfair and deceptive practices claims as between employers and employees." Dalton v. Camp, 353 N.C. 647, 658, 548 S.E.2d 704, 712 (2001). And "[m]atters of internal corporate management, such as the manner of selection and qualifications for directors, do not affect commerce as defined by Chapter 75 and our Supreme Court."

Wilson v. Blue Ridge Elec. Membership Corp., 157 N.C. App. 355, 358, 578 S.E.2d 692, 694 (2003).

Here, there exist contracts, an employment relationship, and corporate management issues. Nothing alleged anywhere in Carty's complaint makes this case sufficiently exceptional to jump the legal hurdles to a Chapter 75 claim. Further, Carty's "straw man" allegation is so bald that it cannot survive a motion to dismiss. Carty alleges no facts relating to his straw man claim, instead relying entirely on a formulaic recitation of the elements of such a claim. He therefore fails to plead sufficient facts to state a claim that is "plausible on its face." Twombly, 550 U.S. at 570. In sum, Carty fails to successfully plead a Chapter 75 claim.

G.

With his seventh cause of action, for tortious interference with contract, Carty contends that the Individual Defendants "intentionally induced . . . Westport and/or WPNC[] not to perform the contract, as described herein." J.A. 145. Carty alleges nothing more specific than this. Based on the rest of the Amended Complaint, we assume that the contracts to which Carty is referring are the Westport and WPNC promissory notes.

14

As discussed above, Carty has failed to successfully plead that the promissory notes have been breached. Under those circumstances, there can be no tortious interference. See Ind. Reg'l Recycling, Inc. v. Belmont Indus., Inc., 957 N.E.2d 1279, 1287 (Ind. App. 2011) ("The five elements necessary for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendants wrongful inducement of the breach."); United Labs., Inc. v. Kuykendall, 322 N.C. 643, 662, 370 S.E.2d 375, 387 (1988) (same). This claim, too, therefore fails.

H.

With his eighth claim, for economic duress, Carty alleges that Defendants prevented him from exercising his free will regarding the promissory notes, the termination contract, and the notice of buyout and release. Carty argues on appeal that the "District Court erred when it determined that Indiana law does not recognize claims for economic duress." Appellant's Br. at 26. Defendants, in turn, argue that Carty failed to object to this aspect of the magistrate's memorandum and recommendation and has therefore waived this issue on appeal.

15

We agree with Defendants: Carty's objections to the magistrate's memorandum and recommendation do not address—or even hint at—this argument. It is, therefore, waived. United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) ("[A] party . . . waives a right to appellate review of particular issues by failing to file timely objections specifically directed to those issues.").

I.

Finally, the district court held that allowing Carty to amend the Amended Complaint would be futile and therefore denied leave to amend. Carty argues that this constituted an abuse of discretion. See US Airline Pilots Ass'n, 615 F.3d at 320 ("We review the district court's denial of leave to amend the complaint for an abuse of discretion.") (quotation marks omitted). A number of the documents attached to, and thereby incorporated into, the complaint (which had already been once amended based on Defendants' motions to dismiss) necessarily defeat Carty's claims. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); US Airline Pilots Ass'n, 615 F.3d at 320 ("The district court does not abuse its discretion in denying leave when amendment would be futile.") (quotation

16

marks omitted).  The district court's refusal to allow amendment therefore did not constitute an abuse of discretion.

### III.

In sum, all of Carty's causes of action in his Amended Complaint fail, for one reason or another, as a matter of law. We therefore affirm the district court's grant of the motion to dismiss.  We also hold that the district court did not abuse its discretion in refusing to allow Carty to again amend his complaint.

AFFIRMED