TYSON, Judge.
 

 *657
 
 Tamora Williams ("Defendant") appeals from a criminal judgment ordering her to pay restitution. We affirm the trial court's order.
 

 *520
 
 I.
 
 Background
 

 Defendant was employed as an office manager at GCF, Incorporated ("GCF") from March 2014 to February 2016. GCF is a general construction company located in Burlington and owned by Charles Clifton Fogleman ("Fogleman"). Defendant's duties with GCF included managing billing, collections, bids, quotes, bank accounts, and payroll.
 

 Other than Fogleman, Defendant was the only person with GCF who was authorized to use the business checking account and debit card.
 

 *658
 
 In January 2016, Fogleman asked Defendant to collect documents relating to the business checking account so that he could prepare GCF's corporate tax filing. In response to Fogleman's request, Defendant allegedly admitted that she had been misappropriating funds from GCF's business account. Fogleman discovered that the GCF debit card had been used for personal purchases at various retail establishments over the previous seventeen months. Fogleman terminated Defendant's employment with GCF.
 

 Fogleman prepared a spreadsheet listing 354 unauthorized expenditures and misappropriations by Defendant. The spreadsheet included the amount, date, and nature of each allegedly improper expenditure. Fogleman reported Defendant's actions and turned over the itemized spreadsheet to the Burlington Police Department.
 

 Defendant was arrested for embezzlement on 5 March 2016. On 25 May 2016, Defendant filed a civil complaint against Fogleman for claims of slander and defamation. On 10 August 2016, Fogleman filed an answer and asserted counterclaims for embezzlement and employee theft.
 

 Defendant and Fogleman mediated their claims. On 13 February 2017, the parties entered into a settlement agreement. Defendant agreed to pay Fogleman $ 13,500.00 as part of the settlement agreement resolving the civil claims. The settlement agreement contained the following release clause:
 

 The parties hereby release and fully discharge each other of and from any and all claims, causes of actions, demands and damages, known and unknown, asserted and unasserted, from the beginning of time to the date hereof, except as set forth herein.
 

 On 26 February 2018, the State charged Defendant by information for embezzlement. That same day, Defendant entered an
 
 Alford
 
 plea to one count of embezzlement. As part of Defendant's plea arrangement, the State agreed to dismiss four counts of forgery, four counts of uttering a forged instrument, and two counts of embezzlement. The State also consented to a probationary sentence to allow Defendant to make restitution payments. Both Defendant and the State expressly agreed to the trial court holding a hearing to determine the amount of restitution.
 

 The restitution hearing was held on 27 February 2018. Fogleman contended he had signed the settlement agreement with the understanding that the civil settlement had "nothing to do with the criminal matter." The State sought restitution of $ 41,204.85. Defendant asserted she did
 
 *659
 
 not owe any restitution because her settlement payment of $ 13,500.00 to Fogleman in the civil action was payment in full under the terms of the settlement agreement and no further restitution was due.
 

 On 23 March 2018, the trial court entered a written order containing findings of fact and conclusions of law. The trial court's order concluded, in relevant part:
 

 2. The Settlement Agreement entered in the Civil action does not prohibit the Court in the Criminal action from determining an amount of restitution to be paid from the Defendant to the victim in this Criminal action.
 

 3. The Defendant is entitled to a credit against the gross amount of restitution determined by this Order in the amount of $ 13,500.00, representing the amount paid by the Defendant in connection with the Settlement Agreement in the Civil action.
 

 The trial court determined the gross amount of restitution owed by Defendant was $ 41,204.85. The trial court credited Defendant for paying $ 13,500.00 under the civil settlement agreement and set the balance of restitution due at $ 27,704.85.
 

 *521
 
 On 12 April 2018, the trial court sentenced Defendant to six to seventeen months imprisonment, which was suspended for a period of thirty-six months of supervised probation, and ordered Defendant to pay $ 27,704.85 in restitution. The trial court's judgment imposed the payment of restitution as a condition of Defendant's probation. Defendant gave notice of appeal and filed a petition for writ of certiorari with this Court.
 

 II.
 
 Issue
 

 Defendant argues the trial court erred in ordering her to pay criminal restitution because the civil settlement agreement between her and Fogleman contained a binding release clause.
 

 This issue presents a question of first impression in North Carolina of whether a civil settlement agreement containing a release clause can bar a party to the settlement agreement from later receiving restitution in a criminal action relating to the civil claim.
 

 III.
 
 Jurisdiction
 

 A defendant entering an
 
 Alford
 
 plea has no statutory right to appeal the trial court's judgment.
 
 See
 
 N.C. Gen. Stat. § 15A-1444(e) (2017).
 

 *660
 
 Defendant has petitioned this Court to issue a writ of certiorari to review her arguments regarding the trial court's judgment, which ordered restitution, on the merits.
 
 See id.
 
 ( a "defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari"); N.C.R. App. P. 21(a)(1) (granting this Court authority to issue a writ of certiorari "in appropriate circumstances" to review lower court judgments and orders).
 

 The Supreme Court of North Carolina has held: "The decision concerning whether to issue a writ of certiorari is discretionary, and thus, the Court of Appeals may choose to grant such a writ to review some issues that are meritorious but not others for which a defendant has failed to show good or sufficient cause."
 
 State v. Ross
 
 ,
 
 369 N.C. 393
 
 , 400,
 
 794 S.E.2d 289
 
 , 293 (2016).
 

 After considering the arguments presented in Defendant's principal and reply briefs, the State's response, and in Defendant's petition for writ of certiorari, we determine Defendant's challenge to the trial court's judgment presents "good and sufficient cause" to review.
 

 Id.
 

 We exercise our discretion to issue a writ of certiorari in order to review the trial court's judgment ordering restitution.
 
 See
 

 id
 
 .
 

 IV.
 
 Standard of Review
 

 We review
 
 de novo
 
 whether the release clause in the civil settlement agreement bars an award of criminal restitution.
 
 See
 

 Williams v. Habul
 
 ,
 
 219 N.C.App. 281
 
 , 289,
 
 724 S.E.2d 104
 
 , 109 (2012) ("A settlement agreement is a contract governed by the rules of contract interpretation and enforcement"(citations omitted) );
 
 Price & Price Mech. of N.C., Inc. v. Miken Corp.
 

 191 N.C.App. 177
 
 , 179,
 
 661 S.E.2d 775
 
 , 777 (2008) ("questions of contract interpretation are reviewed as a matter of law and the standard of review is
 
 de novo
 
 " (citation omitted) ). With regard to the trial court's judgment, "awards of restitution are reviewed
 
 de novo
 
 ."
 
 State v. Buchanan
 
 , --- N.C.App. ----, ----,
 
 818 S.E.2d 703
 
 , 709 (2018).
 

 V.
 
 Analysis
 

 Defendant argues the settlement agreement terminating her and Fogleman's civil lawsuit barred the trial court from ordering further restitution in her criminal prosecution because the settlement agreement contains a general release clause. Defendant contends: "[t]he release clause discharged all claims
 
 between the parties
 
 and barred all
 
 *661
 
 subsequent rights to recover with respect to the offense." (Emphasis supplied). Defendant concedes the release clause did not bind the State from prosecuting her for embezzlement, nor did the settlement payment of $ 13,500.00 to Fogleman absolve Defendant her crimes.
 
 See
 

 State v. Pace
 
 ,
 
 210 N.C. 255
 
 , 257-58,
 
 186 S.E. 366
 
 , 368 (1936) ("the restitution of money that has been either stolen or embezzled, or a tender or offer to return the same or its equivalent to the party from whom it was stolen or embezzled, does not bar a prosecution by indictment, and conviction
 
 *522
 
 for such larceny or embezzlement" (citation omitted) ).
 

 Defendant also contends the State could not obtain an award of restitution in the course of the criminal proceedings. We disagree because civil settlement agreements and restitution awards are separate and distinct remedies, pursued for different ends.
 

 A. Issue of First Impression
 

 When this Court reviews an issue of first impression, it is appropriate to look to decisions from sister state jurisdictions for persuasive guidance.
 
 See
 

 Skinner v. Preferred Credit
 
 ,
 
 172 N.C.App. 407
 
 , 413,
 
 616 S.E.2d 676
 
 , 680 (2005) ("Because this case presents an issue of first impression in our courts, we look to other jurisdictions to review persuasive authority that coincides with North Carolina's law"),
 
 aff'd
 
 ,
 
 361 N.C. 114
 
 ,
 
 638 S.E.2d 203
 
 (2006).
 

 The Supreme Court of Florida reviewed an analogous issue in
 
 Kirby v. Florida
 
 ,
 
 863 So.2d 238
 
 (Fla. 2003). In
 
 Kirby
 
 , a police officer caused a traffic accident by driving under the influence which resulted "in the serious bodily injury to another."
 

 Id.
 

 at 240
 
 . The police officer settled the civil claims with the victim.
 

 Id.
 

 The terms of the settlement agreement released the officer from any civil liability in exchange for "the payment by [the police officer's] insurance company of $25,000- the insurance policy limits."
 
 Id
 
 .
 

 A jury found the officer guilty of driving under the influence and sentenced him to five years of probation, a downward departure from the sentencing guidelines.
 
 Id
 
 . The trial court justified the downward departure by concluding that " 'the need for payment of restitution to the victim outweigh[ed] the need for a prison sentence.' "
 
 Id
 
 . at 241. The trial court awarded the victim "restitution for the out-of-pocket medical expenses, deductibles, and lost wages" beyond the $ 25,000 the police officer owed "pursuant to the settlement agreement."
 
 Id
 
 . at 241.
 

 The officer-defendant challenged the restitution imposed and asserted the settlement agreement as a bar. The prosecution contended
 
 *662
 
 "the settlement agreement contained a release of all liability, but argued that because the [s]tate was not a party to the agreement the victim could not prevent the [s]tate from exercising its statutory right to seek restitution."
 
 Id
 
 . at 241. The trial court rejected the prosecution's argument and refused to order restitution.
 
 Id
 
 .
 

 When the case reached the Supreme Court of Florida, the court evaluated "whether a settlement and release of liability between a victim and a defendant on a civil claim for damages prior to the disposition of a criminal case based on the same incident prohibits the trial court as a matter of law from ordering restitution."
 
 Id
 
 . at 240. The Court concluded "[b]ecause civil settlements and criminal restitution are distinct remedies with differing considerations," a civil settlement does not bar the trial court from exercising its statutory authority to order restitution in criminal matters.
 
 Id
 
 .
 

 The court in Florida recognized restitution in criminal cases promotes "distinct societal goals" including: "(1) to compensate the victim and (2) to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system."
 
 Id
 
 . at 242 (citations omitted). Furthermore, restitution "forces the defendant to confront, in concrete terms, the harm his actions have caused."
 
 Id
 
 . at 243 (citations omitted).
 

 That court also noted civil settlements do not "reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society."
 
 Id
 
 . at 243 (citations omitted). Circumstances which lead a party to settle a civil claim "should have no bearing on the court's statutory duty to order restitution for the damage or loss caused by the defendant's criminal conduct."
 
 Id
 
 . at 244 (citations omitted).
 

 Several other states comport with the Supreme Court of Florida's holding.
 
 See New Jersey v.
 

 DeAngelis
 
 ,
 
 329 N.J.Super. 178
 
 ,
 
 747 A.2d 289
 
 , 294 (N.J. Super. Ct. App. Div. 2000) ("civil settlement or release does not absolve the defendant of criminal restitution");
 
 Fore v. Alabama
 
 ,
 
 858 So.2d 982
 
 , 985 (Ala. Crim. App. 2003) ("[p]rivate parties cannot settle a civil claim and thereby agree to waive the subsequent application of the criminal statute");
 

 *523
 

 Haltom v. Indiana
 
 ,
 
 832 N.E.2d 969
 
 , 972 (Ind. 2005) ("allowing a civil settlement to preclude restitution altogether would infringe upon the State's power to administer criminal punishment");
 
 People v. Bell
 
 ,
 
 276 Mich.App. 342
 
 ,
 
 741 N.W.2d 57
 
 , 60 (2007) ("restitution must be paid...regardless of the existence of the civil settlement").
 

 Our research determined one jurisdiction disagrees with the above line of cases.
 
 See
 

 *663
 

 Minnesota v. Arends
 
 ,
 
 786 N.W.2d 885
 
 , 889 (Minn. Ct. App. 2010). The Minnesota Court of Appeals concluded "that when an alleged victim has made a complete, valid civil settlement of all claims resulting from a criminal offense, the state is precluded from seeking restitution."
 

 Id.
 

 No other state has followed the
 
 Arends
 
 line of cases.
 

 B. Civil Release Does Not Bar Restitution
 

 We find the reasoning of the Supreme Court of Florida and the other similar noted state courts as persuasive. As in
 
 Kirby
 
 , the restitution order gives Defendant the opportunity "to confront, in concrete terms" the harm caused by her misappropriating employer funds through the personal use of the GCF debit card at various retail establishments.
 
 Kirby
 
 ,
 
 863 So.2d at 243
 
 . Here, the trial court considered the value of the property taken minus the value of the property that Defendant has previously returned via a civil settlement in order to reach the conclusion that she owed Fogleman restitution of $ 27,704.85.
 

 The trial court's order reflects "the People['s]" satisfaction in resolving the issue and absolving the debt.
 
 Kirby
 
 ,
 
 863 So.2d at 243
 
 . Although the circumstances which gave rise to the agreement have no bearing, here the settlement agreement specifically states that "the civil matter has been fully resolved."
 

 In addition, trial courts maintain the statutory right to order restitution "as a condition of probation ... to an aggrieved party." N.C. Gen. Stat. § 15A-1343(d) (2017). Similar to the officer's sentence's downward deviation in
 
 Kirby
 
 , as part of Defendant's plea agreement, the State dismissed several other charges in exchange for the restitution payment. The State also consented to a "probationary sentence to allow Defendant to make restitution payments."
 

 Defendant argues that under the plain terms of the settlement agreement, Fogleman could not seek more recovery from Defendant than the $ 13,500.00 he undisputedly agreed to accept in order to settle the civil actions. To hold otherwise, according to Defendant, would deprive her of the benefit of the bargain she obtained from the valid settlement agreement. Although the plain terms of the settlement agreement suggest Fogleman could not seek more recovery from Defendant than the $ 13,500.00 he undisputedly agreed to accept, the plain language of the settlement agreement expressly limited its application to the parties "releas[ing] and fully discharg[ing] each other." The agreement also specifically states that "the civil matter has been fully resolved," limiting the release clause strictly to the parties to the civil matter, and not including the State.
 

 *664
 
 Fogleman also testified the settlement agreement he signed "had nothing to do with the criminal matter." His testimony that the settlement agreement pertained solely to the civil matter may show ambiguity in the terms of the agreement. Where there is ambiguity, the court "look[s] beyond the terms of the contract to determine the intentions of the party."
 
 Stovall v. Stovall
 
 ,
 
 205 N.C.App. 405
 
 , 410,
 
 698 S.E.2d 680
 
 , 684 (2010). The State points to Fogleman's testimony at the restitution hearing regarding his intention in signing the settlement agreement:
 

 [Prosecutor]: And [would] you tell the Court what your understanding was of this civil issue?
 

 [Fogleman]: Yeah, it was a civil matter.
 

 [ [Prosecutor]: And what do you mean by that?
 

 [Fogleman]: It has nothing to do with the criminal matter that we're here with - about today.
 

 [Prosecutor]: Was that your understanding when you signed the agreement?
 

 [Fogleman]: That was the only way that I was going to sign the agreement.
 

 The intention of the parties at the time of execution determines the meaning of a release.
 

 *524
 

 McGladrey, Hendrickson & Pullen v. Syntek Finance Corp
 
 .,
 
 92 N.C.App. 708
 
 , 711,
 
 375 S.E.2d. 689
 
 , 691 (1989). "[T]heir intention is determined from the language used, the situation they were in, and the objects they sought to accomplish."
 

 Id.
 

 Fogleman and Defendant were the exclusive parties to that agreement. The settlement agreement did not involve or bind the State of North Carolina. The State brought criminal charges for crimes committed against the peace of the state.
 

 Adopting the persuasive authority set forth above, "because the State was not a party to the agreement[,] the victim could not prevent the State from exercising its statutory right to seek restitution."
 
 Kirby
 
 ,
 
 863 So.2d at 241
 
 . Private settlement or reimbursement agreements neither usurp the State's ability to uphold criminal statutes nor impede on the State's "distinct societal goals" of the criminal justice system.
 
 Id
 
 . at 243.
 

 Restitution is characterized as a "
 
 reparation
 
 to an aggrieved party ...for the damage or loss caused by the defendant arising out of" the criminal offense.
 
 State v. Reynolds
 
 ,
 
 161 N.C.App. 144
 
 , 149,
 
 587 S.E.2d 456
 
 , 460 (2003) (citing N.C. Gen. Stat. § 15A-1343(d) (2001) ) (emphasis supplied).
 

 *665
 
 Here, the trial court ordered Defendant to pay $ 41,204.85 to compensate Fogleman for his losses due to Defendant's embezzlement, less than the amount Fogleman claimed was taken. The court allowed Defendant a $ 13,500.00 credit for what she has already paid under the civil settlement agreement towards making Fogleman whole. To compensate for losses, the trial court properly ordered Defendant to pay the balance of restitution of $ 27,704.85. The intention of the restitution order is to restore what Defendant took and make Fogleman whole for his losses. Defendant's arguments are overruled.
 

 VI.
 
 Conclusion
 

 The State is not precluded from seeking restitution on a victim's behalf in a subsequent criminal prosecution. The trial court correctly concluded that "[t]he Settlement Agreement entered in the Civil action does not prohibit the Court in the Criminal Action from determining an amount of restitution to be paid from the Defendant to the victim in this criminal action."
 

 The civil settlement and release and the criminal restitution represent separate, distinct remedies. The trial court's restitution order is affirmed.
 
 It is so ordered.
 

 AFFIRMED
 

 Judges INMAN and ARROWOOD concur.